110 F.3d 64
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Timothy D. ROGERS and Rhonda Rogers, Plaintiffs-Appellants,
v.
Gregory P. ROMERI and Schneider National Carriers, Inc.,
Defendants-Appellees.
 No. 96-5281.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1997.
 
 Before: KEITH, MERRITT and COLE, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Timothy P. Rogers brought this personal injury action against defendant Gregory P. Romeri and defendant Schneider National Carriers, Inc., Romeri's employer, alleging that Romeri's negligent driving of a tractor trailer truck caused a collision with Rogers' van. The case was tried before a jury, which found that defendant Romeri was 51% negligent and plaintiff Timothy Rogers was 49% negligent. The jury returned a verdict of $10,000 in damages for Rogers and no damages for Rogers' wife, who had filed a loss of consortium claim. Plaintiffs filed a motion for new trial, arguing that the jury's verdict was inadequate and the court had made erroneous rulings during the trial. The district court denied the motion for a new trial. We affirm.
 
 I.
 
 2
 On July 14, 1992, plaintiff Timothy Rogers was driving his employer's 1989 Dodge Van in an eastwardly direction on I-40 in Benton County, Tennessee. Defendant Gregory Romeri was driving a tractor trailer truck on I-40 that day for his employer, Schneider National Carriers, Inc. As Romeri left a rest stop, he accelerated his truck on the merge lane (which is to the right of the right lane of the highway) and then entered the right lane of the highway in front of Rogers' van. Rogers' van collided with Romeri's truck and Rogers was injured.
 
 
 3
 During trial, the parties presented conflicting accounts of the events that transpired before the accident. Romeri testified that when he was in the merge lane he had looked into his mirror and had observed vehicles in the left lane and no vehicles in the right lane of the highway. Romeri also testified that he was traveling at approximately 50 miles per hour when he moved from the merge lane into the right lane.
 
 
 4
 Rogers presented a different account of the events. According to Rogers, he was driving in the right lane when an uninvolved tractor trailer truck moved from the left lane into the right lane in front of Rogers. Rogers first slowed down. Then Rogers began to accelerate his van and attempted to pass the truck by moving into the left lane. Before Rogers was able to move into the left lane, the uninvolved truck suddenly moved into the left lane, and Romeri's truck moved into the right lane (from the merge lane) in front of Rogers. According to Rogers, Romeri was driving at approximately 30-35 miles per hour and had used less then half of the merge lane before driving onto the highway. Rogers testified that he was unable to see Romeri's truck until the uninvolved truck had moved into the left lane.
 
 
 5
 Rogers' van collided with Romeri's truck and Rogers was injured. Rogers was flown by helicopter to the Vanderbilt University Medical Center for emergency treatment, and he later received additional care from the Campbell Clinic and Russell Orthopedic. His total medical expenses were $50,920.21. In addition, Rogers missed fourteen weeks of work. At the time of the accident, Rogers was earning $100.00 per day for a four day work week; therefore, he sought $5,600.00 in lost earnings.
 
 
 6
 Plaintiff Timothy Rogers brought this action against defendants for his injuries and losses, and plaintiff Rhonda Rogers brought a loss of consortium claim. The action proceeded to trial. The jury returned a verdict for Timothy Rogers of $10,000 of damages against Romeri and no damages against Schneider National. The jury found that Rogers was 49% negligent and Romeri was 51% negligent. In addition, the jury found no damages for Rhonda Rogers. Based on the jury's verdict, the district court entered a judgment against Romeri for $5,100. The district court also granted plaintiffs' motion to amend the judgment to impose vicarious liability on defendant Schneider National under the doctrine of respondeat superior. Plaintiffs filed a motion for a new trial, which the district court denied.
 
 II.
 
 7
 Under Rule 59 of the Federal Rules of Civil Procedure, a district court may grant a new jury trial to all or any of the parties on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). The Court of Appeals reviews a district court's decision to deny a motion for a new trial for abuse of discretion. Davis by Davis v. Jellico Community Hospital, Inc., 912 F.2d 129, 133 (6th Cir.1990). The Sixth Circuit has defined "abuse of discretion" as "a definite and firm conviction that the trial court committed a clear error of judgment." Id. at 133 (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)).
 
 III.
 I.
 
 8
 Plaintiffs argue on appeal that the district court abused its discretion by refusing to grant a new trial. First, plaintiffs argue that the jury's verdict is so inadequate that it must be based on passion, prejudice, capriciousness, and a misconception and/or disregard of the law. Second, the district court erred by failing to instruct the jury on the doctrines of last clear chance and sudden emergency. Third, the district court erred by permitting defendant's accident reconstruction expert to render opinions without a scientific basis. Fourth, the district court erred by permitting defense counsel to cross examine plaintiffs' safety expert on issues of accident reconstruction.
 
 A. Jury Verdict
 
 9
 Plaintiffs argue that the jury's verdict of $10,000 in damages was not adequate because this amount would not even cover Timothy Rogers' medical bills of over $50,000. Plaintiffs contend that the jury was unable to determine the issue of liability, and they resolved this problem by compromising the verdict and finding inadequate damages. Plaintiffs request that this court find that the district court abused its discretion by not granting plaintiffs a new trial in light of the $10,000 verdict.
 
 
 10
 The district court held that the verdict was supportable by the evidence because the jurors may have inferred that Timothy Rogers' employer had paid Rogers' medical bills. During the trial, plaintiffs' counsel had asked the employer if he had received Rogers' bills from Campbell Clinic and Russell Orthopedic, and the employer replied that he had received those bills. Defendants' counsel then inquired why the employer was receiving the bills, and the employer replied that "[t]hey had to be paid." Plaintiffs' counsel failed to object to the testimony when it was offered, failed to request a curative instruction, and failed to request a jury instruction on collateral benefits. The district court relied on Bryant v. Mathis, 278 F.2d 19 (D.C.Cir.1960), in which the appeals court upheld the district court's denial of a new trial under similar circumstances:
 
 
 11
 Although the jury's verdict in this case creates some 'wonderment' we cannot say that it was so arbitrary that it must be reversed as a matter of law. Conceivably, the jury believed that appellant had been paid during her absence from work, and thus did not allow recovery for lost earnings. Although she was entitled to an instruction that lost wages are recoverable notwithstanding compensation from a collateral source, she requested no such instruction and none was given. On this date of the record, we cannot say that the trial court abused its discretion in denying appellant's motion for a new trial.
 
 
 12
 Id. at 20. Similarly, in this instance, plaintiff was entitled to a collateral source instruction, but did not ask for one. Under the circumstances, we find that the district court did not abuse its discretion in holding that the jury could have inferred that Rogers' employer had paid his medical bills.
 
 
 13
 Plaintiffs cite three cases to the court where the plaintiffs were granted new trials because of inadequate jury verdicts. Phav v. Trueblood, Inc., 915 F.2d 764 (1st Cir.1990); Lester v. Dunn, 475 F.2d 983 (D.C.Cir.1973); Reisberg v. Walters, 111 F.2d 595 (6th Cir.1940). Those cases are not controlling because there was no evidence that would have enabled those juries to infer that a third party had paid the medical bills for the plaintiffs. In contrast, in this case, the jury did hear evidence from which they could reasonably infer that Rogers' employer had paid Rogers' medical bills, and therefore, those bills were not part of Rogers' damages. The court notes that defendants' attempt to distinguish the three cases by arguing that the jury may not have believed the uncontroverted medical bills of the treating physicians is not persuasive.
 
 
 14
 In their appeal, plaintiffs attack the district court's decision by arguing that the most the jury could have inferred from the testimony of Rogers' employer was that he paid the bills from Campbell Clinic and the Russell Clinic, which were below $1,500. Plaintiffs explain that they only asked Rogers' employer whether he had seen the bills from those two clinics. However, on re-cross examination, defense counsel asked the employer why he "was receiving bills for this man's medical care." The jury could have inferred from the employer's answer that "[t]hey had to be paid" referred to all of Rogers' medical bills. Neither the question asked by defense counsel nor the answer by Rogers' employer limited the medical bills to the Campbell Clinic and the Russell Clinic. Under the circumstances, we cannot find that the district court abused its discretion.
 
 
 15
 Plaintiffs argue that even if this court finds that the jury could have inferred that Rogers' bills had been paid, $10,000 was not adequate to compensate Rogers for his pain and suffering and lost wages. Rogers had claimed $5,600 in lost wages because he missed fourteen weeks of work. One of the experts testified that Rogers could have returned to work eight weeks after the accident; thereby, decreasing his lost wages to $3,200. In addition, there was conflicting testimony regarding the extent of Rogers' pain and suffering. The district court, citing Cross v. Thompson, 298 F.2d 186, 187 (6th Cir.1962), stated that "[t]here is no measure by which the amount of damages for pain and suffering can be ascertained." Slip op. at 7. The district court, having been present during the trial, was in a better position to judge whether the jury's verdict for pain and suffering and lost wages was adequate. Plaintiffs have failed to persuade the court that the district court abused its discretion.
 
 
 16
 In addition, plaintiffs argue that a reasonable jury could not have found that plaintiff Rhonda Rogers suffered no damages on her loss of consortium claim. During the trial, Rhonda Rogers testified that after the accident she fought with her husband all the time and that they had no sex life. The district court found that the jury might not have believed her testimony regarding damages because on cross examination Rhonda Rogers stated that she and her husband had a good marriage and had sexual relations approximately twenty times in a three year period. In addition, the court noted that her credibility was impeached when she admitted that she had filed an income tax return containing falsehoods. These findings by the district court do not indicate an abuse of discretion.
 
 
 17
 B. Instructions on Last Clear Chance and Sudden Emergency
 
 
 18
 Plaintiffs argue that the district court should have instructed the jury regarding the doctrines of last clear chance and sudden emergency. The instructions of the judge were correct because the doctrines of last clear chance and sudden emergency no longer exist as separate common law doctrines in Tennessee. Eaton v. McLain, 891 S.W.2d 587, 592 (1994). These doctrines have been incorporated into the current law of comparative negligence. Id. The circumstances formerly considered under the doctrines are to be considered by the jury as part of their assessment of fault between the parties. Id.
 
 
 19
 The district court correctly charged the jury to consider the circumstances formerly considered under the doctrines of last clear chance and sudden emergency as part of their assessment of the relative negligence of the parties. The judge charged the jury to consider the circumstances formerly considered under the last clear chance doctrine by charging them to consider "the extent to which a party failed to reasonably utilize an existing opportunity to avoid injury." (Jury Instructions at TR 644). The judge also charged the jury to consider the circumstances formerly considered under the sudden emergency doctrine by charging them to consider "the existence of a sudden emergency requiring a hasty decision." Id.
 
 
 20
 C. Testimony by Defendants' Accident Reconstruction Expert
 
 
 21
 Plaintiffs argue that the district court should not have admitted the testimony of defendants' expert, Darcy Sullivan, regarding the closure times of vehicles traveling on the road and perception/reaction times of drivers. The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:
 
 
 22
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.
 
 
 23
 Fed.R.Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court explained that the trial judge must insure that the expert's testimony rests on a reliable foundation and is relevant to the issues before the court. The type of evidence upon which an expert can rely is governed by Rule 703 of the Federal Rules of Evidence:
 
 
 24
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in a particular field, in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 
 
 25
 Fed.R.Evid. 703.
 
 
 26
 During the trial, Sullivan used a computer program to explain the closure times of vehicles and the perception times of drivers. Plaintiffs do not question the scientific validity of Sullivan's computer program. Rather, plaintiffs object to three assumptions that Sullivan made in running the program: he estimated the distance between the back of Romeri's truck and the front of the uninvolved vehicle; he based his assumption of truck lane changes upon observing forty to fifty changes with a stop watch; and he stated that Rogers should have been able to see Romeri's truck. On the record, Mr. Sullivan stated his credentials and expertise in the fields of civil engineering, traffic and transportation engineering, safety and accident reconstruction. Sullivan explained the perception/reaction time generally accepted by experts. He explained the method for determining reaction times under specific situations. He also explained his computer program and the assumptions made in order to run the program. During the trial, he ran the computer program with different variables in front of the jury. In addition, Sullivan testified that in order to prepare his testimony he reviewed Romeri's statement to the Tennessee Highway Patrol, the Tennessee Highway Patrol report, Rogers' deposition, photographs of the scene, Romeri's deposition, Rainey's expert report, Rainey's deposition, Whitten's expert report, a diagram of the scene, an on-scene investigation, and the deposition of Bentley and his exhibits. Under these circumstances, plaintiffs have failed to persuade us that Sullivan's testimony should have been excluded.
 
 
 27
 D. Cross-Examination of Plaintiffs' Expert Witness
 
 
 28
 Plaintiffs argue that the district court should not have permitted defense counsel to question plaintiffs' witness Jim Rainey on closure speed and perception and reaction times because Rainey is an expert only on safety issues. On direct examination, Rainey testified that Romeri could not have been traveling more than 40 miles per hour when he entered the right lane of the highway. Rainey concluded that Romeri should not have entered the lane until he had fully used the acceleration lane and attained a higher speed. On cross-examination, defense counsel questioned Rainey about closure rates of vehicles approaching the merging vehicle. Plaintiffs objected to this questioning as being outside the scope of direct testimony. We agree with the district court that after Rainey had expressed his opinion that Romeri had failed to properly use the acceleration lane, cross-examination was proper regarding the distance Romeri needed to safely merge onto the interstate. The court finds no error in the district court's ruling.
 
 IV.
 II.
 
 29
 For the foregoing reasons, this court affirms the decision of the district court.